**Raymond BORNE, as Executor of the Estate of Noah B. Borne, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. F 82–205.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Aug. 2, 1983.

On Motion to Alter or Amend Judgment Dec. 13, 1983.

Dennis Becker, Miles Gerberding and Charles McNagny, Barrett, Barrett & McNagny, Fort Wayne, Ind., for plaintiff.

Karen B. Brown, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., David H. Miller, Asst. U.S. Atty., Fort Wayne, Ind., for defendant.

### ORDER

LEE, District Judge.

This matter is before the court on defendant's Motion for Summary Judgment, plaintiff's Cross-Motion for Summary Judgment, and all replies. For the following reasons, defendant's motion for summary judgment will be granted and plaintiff's cross-motion for summary judgment will be denied.

### Discussion

There is no dispute about the facts of this case. The dispute centers on a matter of law. Plaintiff seeks to recover the sum of $3,999.27, plus interest, which was paid toward a deficiency assessment made by the Internal Revenue Service as a result of the disallowance of a foreign death tax credit claimed on the estate tax return of the estate of Noah B. Borne and paid to the Canadian Province of Ontario. Plaintiff contends the estate is entitled to claim such a credit pursuant to the terms of the United States-Canada Tax Treaty, entered into by the government of the United States of America and the government of Canada in 1961, Convention on Estate Taxes, Feb. 17, 1961, United States-Canada, [1963] 1 Tax Treaties (P–H) ¶¶ 22,550–22,565. If the Estate Tax Treaty is not applicable to the estate claim, then § 2014 of the Internal Revenue Code of 1954 controls, I.R.C. § 2014, and the credit claimed by the estate must be disallowed. This court finds the Treaty does not control.

At the time of Noah B. Borne's death, Borne was a United States citizen and a resident of London, Ontario, Canada. His estate claimed against its United States estate tax liability a credit for foreign death taxes paid to the Province of Ontario which were paid with respect to two bank accounts maintained with the Canadian Imperial Bank of Commerce for Noah B. Borne's personal use. These accounts were not connected with the conduct of a trade or business within Ontario at the time of Noah B. Borne's death.

■ The United States-Canada Estate Tax Treaty is concerned with the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on the estates of deceased persons of the two countries. Article I of the Treaty states:

1. The taxes referred to in this Convention are: (a) for the United States of America: the Federal estate tax; (b) for Canada: the estate tax imposed by the government of Canada.

2. The present Convention shall also apply to any other taxes of a substantially similar character imposed by either contracting State subsequent to the date of signature of the present Convention.

Thus, the Tax Treaty applies only to those taxes imposed by the respective governments and not to taxes imposed by political subdivisions of those respective governments. The Treaty basically provides for a credit to be given for taxes imposed by the

non-crediting State on property considered situated in that non-crediting State.

Article V concerns how the credits are computed and what credits and deductions are allowed against the credit being given. Paragraph 3 of Article V states, in pertinent part:

> For the purpose of computing credit under this Article, the amount of the tax of the crediting State attributable to particular property shall be ascertained after taking into account any credit against or reduction of such part of the tax [.] ... The amount of the tax of the other contracting State attributable to such property shall be ascertained after taking into account any credit against or reduction of such part of the tax, ... except credit allowed with respect to death taxes of a political subdivision of such State.

In other words, each contracting country is free to allow, within its own tax structure, credit for death taxes paid by an estate of a deceased person to a political subdivision of the respective country, without losing any amount of the credit which the other country would give to the country taxing the property of the deceased situated in the taxing country where such property is also being taxed by a political subdivision of the country.

This court's reading of the Treaty is supported by first, the comments of the Secretary of State which accompanied the Treaty and second, by the Committee Report on the Estate Tax Convention with Canada. The Secretary of State wrote,

> As in the case of other Conventions of this kind, the new Convention with Canada would be applicable (Art. I), so far as U.S. tax is concerned, only to the federal estate tax, which is imposed upon the transfer of the estate and not upon the receipt of beneficial shares. The Convention would not apply to the imposition or collection of estate or inheritance taxes by the several states of the United States, the District of Columbia or the territories or possessions of the United States.

[1963] 1 Tax Treaties (P–H) ¶ 22,550 at 22,532.

The Committee Report which explains various provisions of the Treaty discusses the taxes which are meant to be included under the Treaty.

> This Convention is similar to all of the other death tax conventions to which the United States is a party insofar as it does not apply to taxes imposed by state and local governments of the United States and is similar to all but two other death tax conventions (the conventions with Finland and Switzerland) in that it does not apply to taxes imposed by political subdivisions of the other country.

*Id.* ¶ 22,567 at 22,542.

The Committee also discussed the credit given pursuant to Article V and stated:

> The second change involves a broadening of the credit allowable under the Convention. For purposes of determining the amount of tax of the non-crediting country (i.e., the country other than the crediting country) for which credit is to be allowed, the provisions of the pending Convention require that the tax of such country *not be reduced by the amount of any credit allowed by it for taxes of its political subdivisions,* whereas the provisions of the prior Convention did require the tax of the non-crediting country to be reduced by any credit it allowed for taxes of its political subdivisions. (Emphasis supplied).

Thus, the United States-Canada Estate Tax Treaty does not allow a credit to be given for taxes paid to political subdivisions of either country. It does, however, allow the national government of each respective country to receive a credit from the other country for the entire amount of tax charged by the national government even though that government allowed a credit on its own tax for taxes paid to political subdivisions of the country. The Treaty, as a matter of law, is not applicable to this situation. The estate paid a tax due on two bank accounts situated in Ontario, Canada to the Province of Ontario, a political subdivision of the Government of Cana-

da. The Treaty will not operate to remove the two bank accounts in question from the control of I.R.C. § 2014.

Section 2014 allows a credit against the estate taxes owed by a United States citizen of the amount of estate, inheritance or succession taxes which are actually paid to a foreign country with respect to property situated within that foreign country and included in the decedent's gross estate. The rule for determining whether property is considered to be located within the foreign country for purposes of § 2014 is the same rule as is used in determining whether property is considered to be located within the United States with respect to decedents who are non-resident aliens. I.R.C. § 2101, *et seq.*

■ Section 2105 of the Internal Revenue Code of 1954 provides that bank deposits in the United States are considered to be situated without the United States if any interest on those deposits, at the time of decedent's death, is not effectively connected with the conduct of a trade or business within the United States. I.R.C. § 2105. The question, then, becomes, whether Borne's bank accounts with the Imperial Bank of Commerce in London, Ontario, are considered to be situated within or without Canada. Borne's estate admitted the bank accounts were not connected with the conduct of a trade or business by Noah B. Borne within Canada. Thus, Borne's bank accounts must be deemed to be situated outside Canada. Borne's estate is not entitled to a credit under § 2014 for the amount of taxes which the estate paid to the Province of Ontario on the two bank accounts.

### Conclusion

It is, therefore, CONSIDERED, ORDERED and ADJUDGED that defendant's Motion for Summary Judgment be, and is, hereby GRANTED. Plaintiff's Cross-Motion for Summary Judgment is DENIED.

### ON MOTION TO ALTER OR AMEND JUDGMENT

This matter is before the court on plaintiff's Motion to Alter or Amend Judgment.

The court heard oral argument on September 21, 1983. Having considered plaintiff's motion, defendant's response, and the oral arguments, for the following reasons plaintiff's motion will be denied.

### Discussion

At the outset, this court wishes to reaffirm its conclusion the United States-Canada Tax Treaty is inapplicable to the case at bar. At oral argument, plaintiff asked this court to apply the standard of whether the interpretation urged on this court by plaintiff in its original motions is so unreasonable that the court cannot find for the plaintiff. This standard, plaintiff argues, is appropriate in light of the tax treaty's purpose to avoid double taxation and in light of the general rule the tax treaty is to be construed in favor of the taxpayer.

Without deciding whether such a standard is the correct one or whether the standard is whether there is support for the construction given the treaty by this court, even applying plaintiff's proposed standard, this court's conclusion the treaty is inapplicable is correct: There is no ambiguity on the face of the treaty. The treaty applies only to taxes imposed by the national governments of the United States and Canada. *See* Article I, U.S.-Canada Tax Treaty quoted at 2, August 2, 1983 order.

Article V provides that the national governments are free to allow credits, on the national tax due, for taxes paid by citizens to political subdivisions of the countries, without losing any credit which will be given by the respective national governments, under the treaty, for the national tax due to one or the other country. For example, if the United States determined the federal tax due was $1,000.00 and allowed against that tax due a credit for taxes paid to the State of Indiana, a political subdivision of the United States, in the amount of $200.00, the treaty requires, in Article V, that Canada would still give a credit of $1,000.00, not $800.00. The actual amount of the national tax due, and there-

fore, entitled to crediting under the treaty, has not decreased, although the actual amount of national tax paid by the citizens was less than the actual amount due. Article V does not provide that the national governments of the United States and Canada will give credits for taxes paid to political subdivisions of the two countries.

The court's construction of the treaty is further supported by the comments of the Secretary of State and the legislative history. Both sources confirm the court's construction of the treaty and are fully explored in the court's August 2, 1983 order. That order is hereby incorporated by reference in this order.

Turning to the real issue of plaintiff's motion, as raised in the motion before the court and argued at oral argument, this court again addresses the question of whether section 2014 of the Internal Revenue Code applies to allow plaintiff a credit for taxes paid to a political subdivision of Canada. The court again answers the question in the negative. Section 2014 provides that a credit shall be given against United States taxes for "taxes actually paid to any foreign country in respect of any property situated within such country and included in the gross estate." Section 2014 further states the rule for determining what credits Subchapter A taxpayers will receive under section 2014. The allowance of credits depends upon where the property on which foreign taxes were paid is deemed to be situated under United States tax laws. The crediting rule under 2014, a part of Subchapter A, is the same as the rule applied to property of people who fall under the laws of Subchapter B.

■ While section 2014 appears, at least facially, not to cover the situation of a United States citizen who is a resident of a foreign country, because 2014 calls for property situs to be determined under a rule applied in the United States under Subchapter B only to nonresident aliens residing in the United States, the answer to this apparent loophole is evident upon an examination of the Subchapter and accompanying regulations. Subchapter A, of which 2014 is a part, applies to citizens of the United States, whether domiciled in the United States, and to residents of the United States who are not citizens. Subchapter A is a more inclusive subchapter than Subchapter B, likely because it causes more taxes to be paid to the United States than does Subchapter B. Section 2001 of the Code clearly states, "A tax is hereby imposed on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." I.R.C. § 2001; Treas.Reg. § 20.0–1(b) (1983).

Treas.Reg. § 20.0–1(b) states, "A 'resident' decedent is a decedent who, at the time of his death, had his domicile in the United States ... A person acquires a domicile in a place by living there, for even a brief period of time, with no definite present intention of later removing therefrom." Thus, a resident within the meaning of Subchapter A includes both citizens and noncitizens, the crucial fact being, not citizenship, but domicile in the United States. The only reasonable definition accordable to "citizen" under Subchapter A is a citizen not a domiciliary of the United States. Such a citizen could be classified by the foreign country in which he is domiciled as a resident or nonresident, according to the rules of the foreign country. How a foreign country views the United States nonresident citizen is irrelevant to the United States or the Internal Revenue Code. What is important and relevant is how the United States in the Code defines citizens and residents for purposes of taxation of a decedent's estate.

■ Mr. Borne was a native-born citizen of the United States who did not have his domicile in this country. There is no dispute Mr. Borne is subject to Subchapter A. He would fit within the definition of "citizen." Thus, he is subject to the terms of Subchapter A, and, in particular, section 2014. Section 2014 is clear from the language used as to the test that is supposed to be applied to property of United States citizens who are not domiciliaries of the United States at the time of their death: the same test the United States uses in

determining situs of property of nonresident aliens who die in this country. It is of no moment that the test applies to a broader group of decedents under section 2014 than it does under Subchapter B (citizens and residents as opposed to nonresident aliens). It can be presumed that Congress was aware that Subchapter A applied to a broader group of decedents than did Subchapter B and could have given a special exemption from being taxed under the prescribed rules of Subchapter A for United States citizens who were not United States domiciliaries. It appears clear from the law and the accompanying regulations, Congress intended to include United States citizens who were nondomiciliaries under the taxing scheme of Subchapter A and section 2014.

Having decided section 2014 applies and that the test for determining situs of property is the same as applied to nonresident aliens dying in the United States, this court again finds that the application of the test to these facts results in a determination that the bank accounts in question must be deemed to be located outside Canada and thus, no foreign death tax credit is possible. The applicable section from Subchapter B is I.R.C. § 2105 and specifically, section 2105(b) which deals with bank deposits. Section 2105 directs that the standards of I.R.C. § 861 are to be used in determining whether the bank deposits "would be treated ... as income from sources without the United States." It is important the Code says "would be treated" which indicates to this court the Code anticipates the result under section 2105 may be a legal fiction, not necessarily in accord with the actual reality of where the bank deposits are located.

I.R.C. § 861(a)(1)(A) provides that bank accounts which are not effectively connected with the conduct of a trade or business within the United States are considered to be without the United States.

Following the command of section 2014, this court substitutes Canada into the equation for the term United States and asks, therefore, if the bank accounts were effectively connected with a trade or business located in Canada. The plaintiff has admitted that the bank accounts were for personal use and were not effectively connected with a trade or business located in Canada. Thus, applying section 2014, through section 2105(b), through section 861(a)(1)(A), this court concludes the bank accounts are deemed to be located without Canada. This is the correct conclusion even in the face of the fact that a legal fiction is thereby created as the bank accounts were actually located in Canada. Just as the tax law creates legal fictions in the depreciation of automobiles and real estate which do not accord with actual reality, so, here, a legal fiction is created regarding situs of property of United States citizens who are not domiciliaries of the United States at the time of their deaths. Plaintiff is not entitled to a section 2014 credit for Ontario taxes paid on the bank accounts.

While plaintiff may argue this result is harsh and inequitable, it is nothing more than what was intended to occur when the statutory sections were drafted. Subchapter A, by definition, includes a broader range of decedents. Congress specifically stated in 2014 that the test used in Subchapter B was to be applied to Subchapter A to determine situs. Such an application of those rules to these facts leads this court to the inescapable conclusion, inequitable though it may seem, that the bank accounts are deemed to be located without Canada. A section 2014 credit simply is unavailable in this situation.[1]

1. *Riccio v. United States of America,* 71–2 U.S. T.C. ¶ 12,801 (D.C.P.R.1971), supports the court's result. It is true the *Riccio* court states that if the property in question is located within the foreign country (there Puerto Rico), then plaintiff was entitled to a refund of foreign death taxes paid. However, *the Riccio* court clearly stated the question of location or situs of the questioned property was controlled by section 2014 and its requirement situs be determined by applying the test used in Subchapter B. That is exactly what was done here. *Riccio's* analysis is common sense, as is this court's, but it went much deeper than plaintiff would have this court believe. There is more to the *Riccio* result than simply saying the court in *Riccio*

## Conclusion

It is, therefore, CONSIDERED, ORDERED and ADJUDGED that plaintiff's motion to alter or amend judgment be, and hereby is, DENIED.

decided the property in question was located without Puerto Rico simply because the property actually was located without Puerto Rico. The *Riccio* court reached the result it did because it applied the Subchapter B test and, under that test, found the property to be deemed to be located outside Puerto Rico regardless of where the property actually was situated.